STEVE EMERY TEICH
Cal. State Bar No. 78397
1390 Market Street, Suite 310
San Francisco, CA 94102
Telephone: (415) 864-5494
steve.teich@sbcglobal.net

Attorneys for Defendant
**ARNOLDO SANCHEZ FARIAS**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff. | CASE NO. **11-cr-0647-RS** SENTENCING MEMORANDUM. |
| vs. | Date: July 23, 2013 Time: 2:30 p.m. |
| ARNOLDO SANCHEZ FARIAS, Defendant. | Place: Courtroom 3 |

**SENTENCING MEMORANDUM**

**1. Under Guideline section 4B1.2 Mr. Farias' 1998 sexual battery conviction is not a crime of violence and cannot be used to aggravate his sentence as a career offender.**

In the presentence report on page 11, Defendant Farias admitted that in 1998 at the age of 19 he engaged in consensual sexual play with no intercourse on different occasions, with 15 year old twin sisters. The district attorney filed numerous charges including rape, statutory rape, and sexual battery. Farias always denied that any force was used. After further investigation the district attorney had reason to doubt the girls' story and agreed to a plea bargain where Farias admitted committing sexual battery in violation of California Penal Code section 243.4(a). All other charges were dismissed. The United States

-1-

Attorney now claims that this fifteen year old plea to sexual battery constitutes a crime of violence making Farias a career offender. The Probation Officer did not make this finding and neither should the court.

The United States Attorney relies on the case of *Lisbey v. Gonzales* 420 F.3d 930, 931 (C.A.9, 2005). The *Lisbey* court with regard to whether sexual battery was an aggravated felony and thus a deportable offense under Immigration and Nationality Act 8 U.S.C. sec. 1227 (a)(2)(iii) stated:

> The statutory definition of sexual battery under California Penal Code § 243.4(a) provides that a person "who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery." **The statute has no requirement of actual or threatened physical force and is therefore not a "crime of violence" within the meaning of § 16(a).** (Emphasis added)

> Title 18 U.S.C. § 16, defines the term "crime of violence" to mean:
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, <u>involves a substantial risk that physical force against the person or property of another</u> may be used in the course of committing the offense.

*Lisbey* made the finding that sexual battery was not a crime of violence under 16(a) since the unlawful restraint need not be physical and can be accomplished by words alone, including words that convey no threat of violence. *Lisbey* did find however that under 16(b) sexual battery under California Penal Code section 243.4(a) does carry a <u>substantial risk of force</u> and is therefore a crime of violence for purposes of section 16(b) [not 4B1.2(a)].

Under guideline section 4B1.2(b) (career offender) a crime of violence has a different meaning then under 16(b). A crime of violence under the career criminal guideline

4B1.2(b)  is defined as any offense that involves conduct that presents a <u>serious potential risk of physical injury</u> to another.  The government seeks to equate the substantial risk of force with the serious potential risk of physical injury but cites no case.

In fact the government concedes on page 7 line 3 of its sentencing memorandum that there is no precedent that qualifies sexual battery as a crime of violence under 4B1.2.   It nevertheless picks out dicta from *U.S. v. Sandoval-Orellana*  714 F.3d 1174, (C.A.9) 2013 to support its position.   *Sandoval-Orellana* however involved the undeniably violent felony of **forcible** sexual penetration (Penal Code section 289(a)(1).  The Sandoval-Orellana court at 714 F.3d 1174, 1178 rejected the theory advanced herein by the  government stating in relevant part: "A person commits an act of sexual penetration :  PC § 289(a)(1) when the act is accomplished **against the victim's will** by means of **force, violence, duress, menace, or fear of immediate and unlawful bodily injury** on the victim."  Of necessity forcible sexual penetration is a violent crime. Unlawful sexual battery (which includes any unlawful touching under  Penal Code section 242) is not.

Lisbey was decided eight years ago. There is no Ninth Circuit precedent, which holds that sexual battery necessary involves as an element a <u>serious potential risk of physical injury</u> to another. One may violate the sexual battery statute, which can also be charged as a misdemeanor, by grabbing them, albeit briefly on a crowded nightclub dance floor and touching them on their buttock without committing a physical injury. (See below). This would be unlawful sexual battery but does not constitute a violent act. Sexual battery is a long way from the forcible sexual penetration cited by the government as precedent. Farias' conviction for sexual battery is not a crime of violence nor does he qualify as a career criminal.

# SECTION 3553 FACTORS

**1. Nature and Circumstances of the offense**

Mr. Farias in no way seeks to minimize the offense, which certainly involves a large quantity of methamphetamine. Mr. Farias has always accepted responsibility for having that quantity in his house in a toolbox in the garage. He cooperated with the police and provided them with a key to the toolbox and later that day made a statement to them acknowledging his possession of the contraband and his guilt. The United States Attorney in his memorandum overstates the offense conduct in two important respects. (1) According to the declaration of Arnoldo Farias attached to the motion to suppress his statement filed on or about December 21, 2012, Document 43-2, when asked where the drugs came from Mr. Farias replied it comes from all over, (not Mexico), denied having any connection to a cartel, and never stated that he could get obtain 500 pounds of methamphetamine (Government memorandum page 2 lines 26-28). (2) The quantity of 49.5 pounds or 22 kilograms of methamphetamine, which no one disputes is significant is not 15 times the quantity needed for an offense level of 38. Rather it one and a half times more then the bottom of level 38 which is 15 kilograms. The government uses the actual methamphetamine table which carries 10 times as harsh a penalty. Mr. Faries is facing a very severe penalty at the top of the guidelines driven by the mandatory minimums sentence requirement. The guns seized at the apartment added an additional five years mandatory consecutive.

**2. History and Characteristics of Defendant**

As a young man, at age 19 Farias saw his life destroyed after inappropriate sexual conduct with two fifteen year olds was charged as rape and sexual battery. The district

-4-

SENTENCING MEMORANDUM
CASE NO. 11-cr-0647.

attorney agreed there was no rape and offered a plea bargain to sexual battery. Facing a far greater sentence should he go to trial and lose Farias accepted the offer.  The district attorney dropped the serious charges but Mr. Farias was thereafter a marked man. He was dismissed from the police academy, unable to obtain decent employment or was fired as soon as his past was discovered (see letter attached from Jasmin Gonzalez).   He was arrested four years later in possession of 11 ounces of methamphetamine and was sentenced to 44 months in prison.

    The government attorney asserts on page 8 lines 18-21  that Farias was thereafter arrested for possession of drugs for sale found in a plastic bag on the console of a car in which he was seated.   Those charges however were dismissed after the codefendant admitted he was responsible for the methamphetamine.

    The 2010 case charging sexual battery arose out of an incident in a crowded nightclub.  It was alleged that Farias put his right hand down the back side of a 23 year old woman and squeezed her buttock. Allegedly Farias then walked outside the club and was standing around when he arrested by the police.  Due to his prior sexual battery case Farias was charged with sexual battery.  The charges were later dropped when other people at the club identified the true perpetrator of the incident who looked very much like Farias. But of course Farias' past put him in a terrible light.   The government's memorandum wrongly paints Farias as a sexual predator based upon his inappropriate conduct when he was 19 and his misidentification years later after which the charges were dropped.  The government is correct that there has never been any violence. Farias' criminal history consists of the disastrous sexual battery conviction at age 19 and drug possession at age 22.  At age 35 he is looking at 25 years in prison.

-5-
SENTENCING MEMORANDUM
CASE NO. 11-cr-0647.

The government attorney claims that Farias' conduct represents a conscious choice to engage in criminal activity, simply because he chose to do so despite multiple arrests, convictions and prison terms. However this is not the man who is portrayed by the 26 letters of recommendation attached to his memorandum.  These letters show Arnoldo Farias to be a very giving person.  He has a very close family, which means the world to him.  He is a kind-hearted man who helps everyone in need. He is portrayed as a down to earth person always willing to give advice or help or just talk to when you are feeling down.  He is described as a friendly person, a great guy to be around who would treat everyone like family.  Because he was thrown out of the police academy due to the sex charges he always encouraged others to study and advance where he could not. One letter states: "Arnoldo always applied and had good jobs but they would fire him because of his record and had a tough life.  Someone who was intelligent, active who never gave up on his hopes to be a normal person with a normal job.  This problem has affected the whole family because of his kindness and respect to everyone."  Another letter describes him as a man of great integrity, extremely dedicated to his family, who always helps his neighbors with their daily chores, coaching the youth baseball teams."  A cousin of Arnoldo describes him as a loving caring person.  "Arnoldo and I were always really close growing up like brother and sister. Arnold takes full responsibility of what he has done, regrets what he did and wants to go forward with his life."  Another letter describes Arnoldo as a good kid.  "He has made some bad decisions in his life but he is a great cousin with a big heart.  He is there to help the family.  I know he regrets what has happened and is remorseful of his actions."  The letters go on and on.  They are attached for the court to give a true indication as to the kind of man Arnoldo Farias is.

Mr. Farias had never sought to lay the blame on anyone else. Although under considerable pressure to cooperate with the government and lay the blame on others he has not sought to avoid responsibility for his bad judgment even though he could have mitigated his role. Since he did not implicate any others in the offense it has been the government's position that Mr. Farias is responsible for it all. Up to the end the government has not shown any forbearance to Mr. Farias even seeking to aggravate his criminal history to no apparent end by charging him as a career offender.

Rather then owing to a depraved character this is not the first time that instant counsel has seen how a youthful mistake can ruin a life. This does not make it any less painful to his friends and family who are devoted to him. Instant counsel has rarely seen such devotion to an accused facing such serious charges. However a sex charge does not go away. It follows the individual for the rest of his life and destroys any opportunities to obtain anything but the most menial employment and ensures second class status.

## CONCLUSION

The prosecution by charging the prior under 21 U.S.C. 851 and filing a gun allegation has predetermined a 25 year mandatory minimum which no amount of 3553 evidence or character letters can affect. The United States Attorney was uncompromising in his prosecution of this case ultimately obtaining a plea to all counts, which eliminated any possibility for a sentence of less then 25 years without cooperation. Mr. Farias is not seeking to minimize his responsibility and bad judgment. He has faced the charges and will suffer the extreme consequences of his actions. The letters attached however demonstrate Mr. Farias true character and the circumstances of his life that led him to this terrible

juncture. They are worthy of perhaps some consideration should the court have some reason to revisit the sentence in the future.

DATED: July 18, 2013

                                             Respectfully submitted,

                                             s/Steve Emery Teich
                                             **STEVE EMERY TEICH**
                                             Attorney for Defendant
                                             **ARNOLDO SANCHEZ FARIAS**